UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN MOSLEY,<br><br>                        Plaintiff,<br><br>v.<br><br>CARLOS DEL TORO, Secretary of the Navy, Department of the Navy,<br><br>                       Defendant. | Case No.: 21-cv-01129-TWR-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CARLOS DEL TORO'S MOTION FOR RULE 35 MENTAL AND PHYSICAL HEALTH EXAMINATIONS**<br><br>[ECF No. 72] |

For the reasons addressed below,

**Plaintiff Ivan Mosley must attend and participate in a mental health examination to be conducted by Dr. Dominick Addario, on <u>Tuesday, October 31, 2023</u>, at <u>12:00 p.m.</u> at 3010 First Avenue, San Diego, CA 92103. The mental health examination will be audio recorded by Dr. Addario.**

///
///
///
///

Before the Court is a Motion for Rule 35 Mental and Physical Health Examinations filed by Defendant Carlos Del Toro, Secretary of the Navy ("Defendant" or "Navy"). (ECF No. 72.) Defendant requests that the Court order a mental health examination and a physical examination of Plaintiff Ivan Mosley ("Plaintiff") to evaluate his claims of severe emotional distress and physical symptoms allegedly caused by the Navy. (*Id.* at 2.) Plaintiff did not file an opposition; however, he filed a printout of an article from the internet entitled "Plaintiff's Rights Regarding an Independent Medical Examination," some language of which Plaintiff highlighted. (ECF No. 73.) Based on certain highlighted language ("Agreeing to the request," "Agreeing as modified to the request," language related to who can be present for an examination, "Question of Plaintiff is Limited," and "Other Rights of the Plaintiff"), one could interpret the filing as an indication that Plaintiff agrees to the requests so long as he is allowed to have someone present at the examination, the questioning is limited, and a certain standard of care during the examination is required. (*Id.*)  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

I.  **BACKGROUND**

Plaintiff commenced this action on June 17, 2021. (ECF No. 1.) On October 3, 2022, plaintiff filed a Second Amended Complaint ("SAC"),[1] the operative complaint, alleging harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 26.) Plaintiff, an African American man, alleges that Defendant and his employees discriminated against him and harassed him because of his race while he was employed as a civilian cook/chef at the Navy facility known as the Admiral Kidd Club ("AKC"). (*Id.* ¶¶ 2, 15.) Defendant further alleges that Defendant's management retaliated against him for having complained about such discrimination. (*Id.* ¶ 2.) Plaintiff

---

[1] Although captioned "First Amended Complaint," the complaint filed on October 3, 2022, is Plaintiff's Second Amended Complaint. He previously filed a First Amended Complaint on February 25, 2022. (*See* ECF No. 14.)

was employed by the AKC from June 2, 2011, until he was terminated on August 20, 2017. (*Id.* ¶¶ 16, 23–25.) Plaintiff seeks general damages, compensatory damages, and special damages, "including but not limited to back pay, front pay, moving expenses, and other related costs," as well as attorney's fees, costs, and interest. (*Id.* ¶¶ 40–44.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 35 authorizes a court to order "a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). A party moving for a physical or mental examination must meet two requirements: first, the physical or mental condition of the party must be "in controversy;" and second, the moving party must establish "good cause" for the examination. *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 117–20, (1964)); *see also Nguyen v. Qualcomm Inc.*, No. 09-cv-1925-MMA (WVG), 2013 WL 3353840, at *2 (S.D. Cal. July 3, 2013) (the moving party has the burden of showing these requirements are met).

A party's mental or physical condition is in controversy when it is the subject of the litigation. *See Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013); *Ashby v. Mortimer*, 329 F.R.D. 650, 653 (D. Idaho 2019). With respect to a mental examination, "courts will order plaintiffs claiming emotional distress damages to undergo an [examination] when one or more of the following factors is present: (1) the complaint includes a claim for intentional or negligent infliction of emotional distress; (2) the plaintiff alleges a specific mental or psychiatric injury or disorder; (3) the plaintiff claims unusually severe emotional distress; (4) plaintiff offers expert testimony to support the claim of emotional distress; or (5) the plaintiff concedes that her mental condition is 'in controversy' for purposes of Rule 35." *Gavin*, 291 F.R.D. at 164; *see also Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995). Although a parties' mental condition may not be in controversy where only "garden variety" emotional distress damages are claimed, the presence of one of these factors is sufficient to place mental state in controversy. *See*

1  *Hongwei Zhang v. United Techs. Corp.*, No. 10-cv-0660-DMS (MDD), 2011 WL 3890262, at *1 (S.D. Cal. Sept. 2, 2011) (citing *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 668 (S.D. Cal. 2001)).

To assess whether "good cause" exists, courts consider: "(1) the possibility of obtaining desired information by other means; (2) whether plaintiff plans to prove [his] claim through testimony of expert witnesses; (3) whether the desired materials are relevant; and (4) whether plaintiff claims ongoing emotional distress." *Ayat v. Societe Air France*, No. C 06-1574 JSW JL, 2007 WL 1120358, at *5 (N.D. Cal. Apr. 16, 2007) (citation omitted).  Even if the Court finds that "good cause" exists, it has discretion to determine whether to order an examination.  *See Buffington v. Nestle Healthcare Nutrition Inc.*, No. SACV 18-00106-JVS (JDEx), 2019 WL 3063516, at *1 (C.D. Cal. Apr. 18, 2019).  Rule 35 is to be "construed liberally to allow the examination." *Hongwei Zhang.*, 2011 WL 3890262, at *1 (citation omitted).

### III.   DISCUSSION

In its motion, Defendant requests that the Court order an independent psychological examination ("IPE") to evaluate Plaintiff's claim of "severe emotional distress" and an independent medical examination ("IME") to evaluate his hernia, hypertension, headaches, and foot injury, all of which he attributes to the Navy's conduct during the time at issue in the SAC.  Although Defendant was aware that Plaintiff claimed physical and emotional injuries in January 2023 when Plaintiff provided interrogatory responses, Defendant asserts that the need for these examinations did not become apparent until Plaintiff's deposition on August 11, 2023.  (ECF No. 72-1, Declaration of Mary Cile Glover-Rogers ("Glover-Rogers Decl.") at ¶¶ 4–5, 16.)  In subsequent meet and confer discussions, Plaintiff further revealed that he is alleging "severe emotional distress" and not "garden variety emotional distress." (*Id.* ¶¶ 16, 21.)  Defendant requests that the Court order an IPE and IME in accordance with terms outlined in Attachments 1 and 2 to the Motion.

///

///

### A. IPE

Defendant argues that Plaintiff has placed his mental health in controversy by seeking damages for severe emotional distress. (ECF No. 72 at 6.) Plaintiff has attributed headaches, stress, and anxiety to Defendant's actions and sought mental health treatment to manage his alleged stress and anxiety. (*Id.* at 6–7; *see also* Pl. Dep. at 289:21–297:23.) Plaintiff also claims that he lost sleep and his ability to eat due to Defendant's actions, notably from "[b]eing bullied" and the constant fear of being fired. (*Id.* at 7; *see also* Pl. Dep. at 289:21–292:23.) Plaintiff further claims physical manifestations of his alleged stress and anxiety brought on by Defendant's actions. Plaintiff claims he experienced high blood pressure, hypertension, and headaches as a result of the stress because "anytime someone's telling you that they're going to fire you, you don't belong here and all that stuff, that's stressful." (Pl. Dep. at 281:16–286:16.) He further claims he fainted at work which allegedly happened after a conversation with his supervisor, Victor Farfan, which resulted in him being in the hospital for five days. (Pl. Dep. at 283:10–24; *see also* ECF No. 14 at ¶ 20 (alleging in February 2017 Plaintiff "was so afraid and overwhelmed that he passed out at work, resulting in a week-long hospital stay.").)

The Court finds that Plaintiff has placed his mental health in controversy by claiming severe emotional distress. Although the SAC does not elaborate on the extent of his emotional distress, emotional distress was alleged and Plaintiff has claimed in subsequent proceedings that he experienced severe emotional distress because of Defendant's actions, as opposed to garden-variety emotional distress, and has sought professional treatment as a result. *See Turner*, 161 F.R.D. at 95; *see also Conforto v. Mabus*, No. 12-cv-01316-W BLM, 2014 WL 3407053, at *3 (S.D. Cal. July 10, 2014) (finding the plaintiff's mental condition in controversy based on allegations the defendants' activity caused her to suffer anxiety, panic attacks, depression, stress, daily crying spells, sleeplessness, increased or decreased appetite causing fluctuations in her weight, elevated blood pressure that included an increase in her blood pressure medication, and general overall deterioration of her health); *Dornell v. City of San Mateo*, No. CV 12–06065–CRB (KAW), 2013 WL

5443036, at *4 (N.D. Cal. Sept. 30, 2013) (finding a claim for continuing emotional distress resulting in anxiety, high blood pressure, chest pain, sleeplessness, weight gain, inability to focus and loss of interest in daily life activities and hobbies was not "garden-variety" emotional distress). Moreover, in Plaintiff's response to the present motion and during status conferences before the Court, Plaintiff has not objected to Defendant's contention that he has placed his mental condition in controversy for purposes of Rule 35. *See Turner*, 161 F.R.D. at 95; *see also Ayat,* 2007 WL 1120358, at *4 (relying on the fact the plaintiff does not argue that his mental condition is not in controversy in finding that he has put his mental condition in controversy).

The Court further finds good cause exists for the IPE. As Plaintiff is proceeding *pro se* and has not designated any experts, it appears that Plaintiff will rely on his own testimony and mental health records to support his allegations. This would tend to weigh against an IPE. *Cf. Ayat,* 2007 WL 1120358, at *6 (finding that the plaintiff's plan to rely on the testimony of expert witnesses militates in favor of finding good cause for an independent examination by the defendant's experts so that they can adequately scrutinize and rebut the conclusions of the plaintiff's experts). Plaintiff also testified that he does not really have any current stress and anxiety, except for the stress caused by litigating this lawsuit *pro se* and paying his bills. (Pl. Dep. at 294:2–21.) This would also tend to weigh against an IPE. *Cf. Hongwei*, 2011 WL 3890262, at *2 (noting that where a plaintiff alleges ongoing mental injury or the likelihood of future mental distress, there is typically good cause for a mental examination).

However, Defendant did not have access to Plaintiff's mental health records before deposing Plaintiff; indeed, Defendant only learned the records existed at the deposition. Therefore, Defendant has not had an opportunity to review or cross-examine Plaintiff on these records. Moreover, as Defendant argues, an IPE will allow Defendant to understand "to what extent Plaintiff's medical conditions/severe emotional distress were pre-existing" or were "caused by the Navy's alleged wrongful conduct." (ECF No. 72 at 9.) Although Plaintiff's mental health records may illuminate such a distinction, such records are not a

substitute for an examination because, as Defendant argues, they often contain brief notations, while "a professional examination of Plaintiff allows for a taking of a careful and detailed history of his symptoms, past stressors and treatment, to determine the extent of the alleged injuries, and whether other factors may have contributed to or exacerbated them." (*See id.*)  In these circumstances, the Court finds there is good cause for an IPE. *See Nguyen*, 2013 WL 3353840, at *7 (a defendant should have a "balanced opportunity to assess the plaintiff's allegations and proof concerning emotional distress damages" and an IME may be necessary to afford the defendant "an opportunity to ascertain the exact duration" of the plaintiff's alleged emotional injuries and the extent to which the defendant's actions may have caused them) (citations omitted)).

Defendant further requests that a third-party be excluded from the IPE and for an audio recording of the IPE. (*Id.* at 10–11.) A third party—whether human or electronic—cannot sit in on a mental examination under Rule 35 "unless special circumstances require it." *Conforto*, 2014 WL 3407053, at *5 (quoting *Nguyen*, 2013 WL 3353840, at *9); *see also Soto v. United States*, No. 13-CV-2359-BAS (DHB), 2014 WL 12577594, at *2 (S.D. Cal. July 29, 2014) (while courts have discretionary authority under Rule 35 to permit the presence of a recording device at a Rule 35 examination, there is no absolute right to the use of such a device and it is not considered normal procedure). Defendant argues good cause exists to record the IPE because it "will enhance the examination's reliability and provide a source of information for consideration by the trier of fact." (ECF No. 72 at 11.)

Plaintiff indicated during meet and confer efforts with Defendant that he wanted a third party to attend his IPE. (Glover-Rogers Decl. ¶ 24.) Plaintiff's highlighting of the article he filed as his response to the present motion could also be interpreted to mean he wants someone to accompany him. (*See* ECF No. 73 at 2–3.) However, the Court does not know the desired purpose of such attendance, nor the identity of the person Plaintiff may be seeking to have in attendance. As such, the Court finds that Plaintiff has not made any showing that special circumstances exist to overcome the general rule that third parties are not permitted to attend an IPE. *See Nguyen*, 2013 WL 3353840, at *9; *see also*

*Conforto*, 2014 WL 3407053, at *5 (finding the plaintiff's desire to have counsel present to prevent questions that he feels are unduly burdensome or probative does not constitute a "special circumstance"); *Ragge*, 165 F.R.D. at 609–10 ("Third party observers may, regardless of their good intentions, contaminate a mental examination."). However, the Court finds circumstances warrant granting Defendant's unopposed request for an audio recording, with a copy to be given to Plaintiff. Therefore, both parties will be ensured of the reliability of the examination.

### B.     IME

Defendant also argues that Plaintiff has put his physical health in controversy and good cause exists for a separate medical examination. In written discovery and during Plaintiff's deposition, he attributes the following physical symptoms and/or injuries to the conduct of the Navy: hernia, high blood pressure, hypertension, headaches, and foot injury. (Glover-Rogers Decl., Ex. 1 (Interrog. 10); Pl. Dep. at 278:13–288:7.) Defendant argues that the fact Plaintiff attributes these physical conditions to the conduct of the Navy puts the conditions "genuinely in controversy." (ECF No. 72 at 8.) Defendant further argues that good cause exists because an IME is essential to understanding to what extent Plaintiff's medical conditions were pre-existing. (*Id.* at 9.)

The Court finds that Defendant has not sufficiently established that Plaintiff has put his physical health in controversy in this case. *See Ayat*, 2007 WL 1120358, at *5 (considering the *Turner* factors in determining whether a plaintiff has put his physical condition in controversy). This "in controversy" requirement is not met "by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require[s] an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy[.]" *Schlagenhauf*, 379 U.S. 104. Here, Plaintiff's Title VII discrimination and retaliation claims are not premised on any physical injury and Plaintiff does not allege any physical injury caused by Defendant's actions in the SAC. *Cf. Ayat*, 2007 WL 1120358, at *5 (finding the plaintiff's physical health in

controversy in part because the plaintiff sought compensatory damages arising from bodily injury).

Moreover, in his deposition, Plaintiff claimed his high blood pressure, hypertension, headaches, and a fainting spell were physical manifestations of the stress and anxiety caused by the Navy's actions, but he also testified he no longer really has stress and anxiety other than the stress caused by litigating this lawsuit *pro se* and paying his bills. (Pl. Dep. at 281:16–286:16, 294:2-21; *see also* ECF No. 14 at ¶ 20.) Plaintiff further claimed that his job put stress on his hernias because he was working hard, *i.e.*, "cleaning tables, mopping, cooking" and "lifting 80- or 100- pound, 150-pound boxes." (Pl. Dep. 278:13–281:15.) However, Plaintiff does not claim that Defendant's alleged harassment and retaliation caused or exacerbated his hernia pain. (*See id.*) Plaintiff was "just dedicated to [his] job" and "did [his] job very, very well." (Pl. Dep. 278:13–22.)

Plaintiff does contend that his off-duty foot injury, for which he filed a separate worker's compensation claim, was exacerbated by the conduct of the Defendant's that is the subject of this lawsuit. (Pl. Dep. at 286:18–289:20.) He contends that his supervisor required him to return to "full duty" at work even though his foot was not fully healed as a "a ploy" to get him back in the kitchen to create a pretext for firing him. (Pl. Dep. at 287:17–289:20.) However, Plaintiff does not allege that Defendant caused his foot injury, and it is not sufficiently relevant to the claims in this lawsuit for the Court to find that Plaintiff's physical condition is in controversy and warrants an independent medical examination. Lastly, the Court notes that Plaintiff has not designated any experts to discuss his physical condition.

Even if the Court were to conclude that Plaintiff has placed his physical condition in controversy for purposes of this lawsuit, the Court finds that Defendant has not demonstrated good cause for a physical examination. Plaintiff's medical records will be the most reliable source of information to determine whether Defendant's actions between 2011 and 2017 could have and did cause Plaintiff's blood pressure, hypertension, hernia pain, and headaches to spike and whether his foot injury got worse after Defendant ended

his light duty and sent him back to the kitchen. Unlike Plaintiff's mental health records, the objective findings (*e.g.*, blood pressure measurements) of a physical examination should be adequately reflected in Plaintiff's medical records and Defendant has not demonstrated that the records are insufficient. Moreover, other than Plaintiff's hernia[2] and foot injury,[3] which are not alleged to have been caused by Defendant, it is not clear that Plaintiff is claiming any ongoing physical conditions that an independent examiner could examine.

Accordingly, the Court denies Defendant's motion for an IME.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Rule 35 Mental and Physical Health Examinations. The Court denies Defendant's request for an IME. However, the Court grants Defendant's request for an IPE, to be conducted as follows:

Plaintiff shall attend and participate in a mental health examination to be conducted by Dr. Dominick Addario, on **Tuesday, October 31, 2023**, at **12:00 p.m.** at 3010 First Avenue, San Diego, CA 92103. The mental health examination will be audio recorded by Dr. Addario.

Psychological testing begins at 12:00 p.m., followed by a face-to-face exam. The usual exam takes 4-6 hours depending on the time needed for Plaintiff to complete testing.

Plaintiff shall bring a list of current medications/dosages and eyeglasses, if needed, to the examination.

///

///

---

[2] Plaintiff has represented numerous times to the Court that he is in the process of trying to schedule a surgery to address his hernias.

[3] In his deposition, Plaintiff stated that he has ongoing "sharp pains" in his foot that hit him "every so often," but he has never received any treatment for his foot and does not take any medication for his foot pain. (Pl. Dep. 288:4–289:14.)

<u>Defendant shall pay the fee for Dr. Addario's examination of Plaintiff. However, if Plaintiff fails to appear at the scheduled examination, Plaintiff will be responsible for a reasonable non-appearance fee, which could be substantial.</u>

Only Plaintiff and Dr. Addario (including his staff) shall be present in the examination room during the examination. Plaintiff's legal representatives, if any, Defendant's attorneys and legal representatives, and all other third parties shall not attend, participate, or otherwise be present at the examination once the examination begins or while it is underway.

Due to COVID-19 safety protocols, Plaintiff is encouraged to wear a mask while in Dr. Addario's office, however, all face-to-face evaluations will occur via Zoom without the mask. Plaintiff is in a private room for this Zoom-based part of the examination and Dr. Addario's office provides the equipment necessary. Plaintiff will have minimal personal interaction. Further, Dr. Addario's office will ensure that items in the office are properly sanitized and applicable COVID-19 guidelines are in place.

Once Plaintiff completes psychological testing in the private room, Dr. Addario and Plaintiff will connect via Zoom for the face-to-face evaluation without a mask. The examination will proceed as follows:

A. A face-to-face interview with patient of 2 to 3 hours. In the standard comprehensive psychiatric evaluation, the following is evaluated:

    1. History of condition
    2. Background Information
    3. Education
    4. Occupational History
    5. Family History
    6. Past Medical History
    7. Psychiatric History
    8. Review and Summary of Medical Records

        9.       Review of Psychiatric Systems – Including Appetite, Habits, Activities, Mood, Phobias, Energy Level, and Relationships

        10.     Mental Status Examination Including: Appearance, Speech, Behavior, Memory and Affect, Sensorium and Cognition, Insight and Judgment, Memory and Calculations and Proverbs, and Thought Processes

    B.    Psychological Testing requiring 2 to 3 hours depending on the patient's ability to complete in that time period.  Tests include MMPI-2, Millon Clinical Multiaxial Inventory – IV and Self-Assessment Tests, including Wahler Physical Symptoms Inventory Test, Shipley Intellectual Assessment Test, The Measurement of Depression Test of Zung's, Beck Depression Inventory Test, Beck Anxiety Inventory Test.

**IT IS SO ORDERED.**

Dated:  October 13, 2023

                                                 */s/ Jill Burkhardt*
                                                 Hon. Jill L. Burkhardt
                                                 United States Magistrate Judge